IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| RONALD FAIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| vs. ) | No. 08-5133-CV-SW-JCE-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

Plaintiff is appealing the final decision of the Secretary denying his application for disability insurance benefits ["DIB"] under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq., and for supplemental security income benefits ["SSI"] under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be reversed.

Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one

position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they

are inconsistent with the evidence in the record as a whole.  Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

Discussion

Plaintiff, who was 21 years old at the time of the hearing before the ALJ, has a high school education with special education classes.  He alleges that he is disabled because of Aspergers Syndrome.  At the hearing, his attorney stated that the theory of the case is that plaintiff meets listing 12.10 for Pervasive Developmental Disorder.

At the hearing before the ALJ, plaintiff testified that he worked part-time after high school at McDonalds as a cook for four to six hours a week.  This job lasted a year.  It ended "[b]ecause people would hurt me. They basically would throw me into the freezer and leave me there. There was one subject who had touched me." [Tr. 280].  Plaintiff testified that he was able to work there a year because his parents made him.  He had also worked at his sister-in-law's daycare for about six months.  He worked a couple of hours each day cleaning the floor.  He testified that he had received special help with history while in school;  that he was bullied at school by different people during his freshman year; he only had one friend; and he has no friends now.  He has lived with his parents his entire life.  During the day, he tries to keep the house in order, tries to mow the lawn, and to keep the air conditioner working.  When it's dark enough at night, he goes out and watches the stars.  He has problems going into public because he gets anxiety attacks.  He feels that people are gawking at him and making fun of him.  He then feels like he is going to pass out and that his heart is beating out of his chest.  This lasts until he gets home. He usually goes with his mother to the grocery store, but he never goes anywhere by himself.  He doesn't know if he has any physical limitations that would keep him

from sitting or standing for any period of time. Other than the anxiety attacks, he couldn't remember if he had other problems, either in public or otherwise. He does very often feel sad–about four days a week. When that happens, he tries to think about lights because they make him happy. He typically feels sad for a couple of hours. He takes medication for depression, which makes him feel dizzy and tired. Regarding the anxiety attacks, they do occur other times than when he's out in public. He doesn't know what causes them. He has them about three days a week. He has taken medication for them, but it hasn't helped. Plaintiff testified that he watches the Science Channel on television, that he would be able to tell someone what he watched after a 30-minute show, but that, other than science, there is nothing that interests him. He has problems concentrating, and when his parents tell him something, he will forget, and they will have to remind him. It was his testimony that they have to repeat their instruction about ten times before he is able to do the task. He also has noticed that his memory is fading. He can only remember something he's watched from thirty minutes to an hour, and then it disappears.

      Plaintiff's mother also testified. She stated that plaintiff has lived with her since birth, and she sees him everyday. He has obsessive compulsive disorder ["OCD"], and panic attacks. In terms of the OCD, she testified that he will check the doors and stand at a doorknob for 20-25 minutes. This is a daily occurrence, which happens at least six to seven times a day. He doesn't have too many panic attacks at home, but when he is out in public with a lot of people around, he feels like he is ready to pass out. This will continue until he gets home. In their home, they cannot move anything, from a vase to a piece of furniture, because it disturbs her son. If that happens, he may stay in the bathroom for a couple of hours. Ms. Fain stated that plaintiff was in

4

special education for all his high school classes for learning disabilities.  He actually started in special education classes in first grade.  In high school, he had few friends and the ones who did befriend him got him into trouble; he was also attacked a few times, which extended until his junior year.  When he was working at McDonalds, it was mainly on weekends, and they had to force him to go to work or otherwise he wouldn't go.  He was very unhappy and depressed at work. He said that management didn't understand him, and that they thought he was lazy, daydreaming, and didn't focus on the job.  He also did light janitorial work at her daughter-in-law's daycare, but had the same problems regarding not being focused.   Her daughter-in-law had to be with him to make sure he was doing the job, even sweeping or cleaning.  At home, he cannot do chores on his own.  He has to be reminded or he will forget in a few minutes; he has to be reminded quite a few times to do something.  He is able to take care of his personal needs, but he has to be reminded to take a shower.  Ms. Fain also testified that plaintiff is transgender, and believes he is a woman in a man's body.  She thinks this causes him a lot of mental anguish.  He is in therapy about this, and they have discussed that he wants surgery.  He takes Zoloft for depression, a medication for OCD, Vistaril, and over-the-counter medication for sleeping. Plaintiff's mother testified that he doesn't always take the Vistaril immediately when he has a panic attack because it makes him sleepy.  She does encourage him to take it when he is too stressed, and he did so around the holidays when a lot of family was around.

Dr. Sidney Bolter, M.D., a psychiatrist and neurologist,  testified at the hearing regarding his review of plaintiff's medical records.  It was his opinion that plaintiff suffers from Aspergers Syndrome, which is particularly exhibited by his preoccupation with inanimate objects like electrical fixtures.  This would also explain his interest in science.  He noted that this

preoccupation demonstrates a preference for inanimate objects over people, and in plaintiff's case, he is fascinated by and collects electrical fixtures, even going to bed with them. The medical expert did not think that plaintiff had OCD, even though he had taken medication for it at one point, but believed this is part of the Aspergers because of his attachment to lighting fixtures and electrical wires. He also thought that he had a learning disorder. He thought that some of plaintiff's depression could stem from his issues with transgenderism. He noted that he had low to borderline intelligence. It was the expert's opinion that neither the Aspergers nor the learning disorder met or equaled any listed impairment. He testified that by the time a person gets to plaintiff's age, they usually do better with social functioning, and are capable of doing some kind of work. He thought his concentration, persistence, and pace issues were only mild. The expert opined that a person with plaintiff's "psychological profile could do simple tasks in a non-public minimal contact environment." [Tr. 306]. The vocational expert testified that such jobs could include a floor waxer, which is a medium, unskilled job; garment folder, which is light, unskilled; and final assembler, which is sedentary, unskilled.

     The ALJ found that plaintiff has not engaged in substantial work activity since the alleged onset date of disability, February 9, 2002. She found that the medical evidence established that plaintiff has Aspergers Syndrome and a learning disorder. It was her opinion that plaintiff was not entirely credible regarding his subjective assessments concerning the intensity, persistence, and limiting effects of his symptoms. The ALJ found that claimant did not have an impairment or combination of impairments that met or equaled one of the listed impairments. It was her finding that plaintiff was unable to perform his past relevant work as a janitor or fry cook. She found that plaintiff had the residual functional capacity ["RFC"] to

perform a full range of work at all exertional levels, with restrictions to simple tasks, nonpublic, and with little contact with others. These included the jobs delineated by the vocational expert such as a floor waxer, a garment folder, and a final assembler. Therefore, it was the ALJ's finding that plaintiff is not under a disability as defined by the Act.

Plaintiff contends that the ALJ's decision should be reversed because she gave controlling weight to the opinion of a non-examining, agency medical consultant; and that she made an improper RFC determination.

Plaintiff asserts, specifically, that the ALJ did not give any weight to the Medical Source Statement-Mental ["MSSM"] of Michelle Whitmire, Psy.D., and to other treating providers, and rather, gave controlling weight to the opinion of a non-examining, government-paid medical consultant. He asserts that plaintiff started seeing Michelle Whitmire in February of 2006 on the recommendation of his treating psychological nurse practitioner. He saw her until September of 2006. Plaintiff contends that the ALJ discounted the MSSM of Dr. Whitmire and Dr. Fairman, Psy.D., who co-signed her notes, because the ALJ opined that it was not supported by the totality of the medical evidence of record and was inconsistent with other medical evidence in the record. Plaintiff contends that the ALJ relied, instead, on the opinion of the medical witness who testified at the hearing.

Turning first to the weight given to the opinion of the treating physician, while a treating physician's opinions are ordinarily to be given substantial weight, they must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). The ALJ may reject the opinion of any medical expert if it is

7

inconsistent with the medical record as a whole.  See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995).  In Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000), the Eighth Circuit Court of Appeals discussed the weight to be given to the opinions of treating physicians, holding that the opinion of a treating physician is accorded special deference under the Social Security regulations.  Additionally, the ALJ is required to conduct an evaluation of "other medical source" opinions pursuant to several factors that are enumerated and defined in the regulations.  Shontos v. Barnhart, 328 F.3d 418, 425 (8th Cir. 2003) (stating "[t]he amount of weight given to a medical opinion is to be governed by a number of factors including the examining relationship, the treatment relationship, consistency, specialization, and other factors").

In this case, the ALJ dismissed the opinions of Dr. Michelle Whitmire, Psy.D., who completed a medical source statement on March 23, 2006, because she found that "her conclusions are not supported by the totality of the medical evidence of record." [Tr. 18].  The record reflects that Dr. Whitmire found that plaintiff was markedly limited in his ability to understand and remember very short and simple instructions; to understand and remember detailed instructions; to carry out very short and simple instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; to complete a normal workday and workweek; and to maintain socially appropriate behavior. She found that he was extremely limited in his ability carry out detailed instructions; to work in proximity with others; to make simple work related decisions; to interact appropriately with the general public; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism; to respond appropriately to changes in the work setting; to travel in unfamiliar places or use public

transportation; and to set realistic goals or make plans independently of others. [Exhibit 11F]. The ALJ, without elaboration, rejected this opinion from a treating source. She stated that Dr. Bolter had testified that plaintiff had "less restrictive limitations and was capable of simple tasks in a nonpublic environment, with minimal contact with others." [Tr. 18]. Therefore, the ALJ stated that she found "no reason to give controlling weight to the opinions of Dr. Whitmire as a treating source, as they are not supported by objective evidence in her records and are inconsistent with the other substantial evidence of record." [Tr. 18-19].

This dismissive statement by the ALJ does not meet the regulatory requirement when considering the opinions of an "other medical source." An ALJ "is not free to disregard the opinions of [other] health providers simply because they are not medical doctors." Duncan v. Barnhart, 368 F.3d 820 (8th Cir.2004). In this case, the ALJ failed to support her decision to reject the opinion of Dr. Whitmire and other treating providers, as well as the record as a whole regarding plaintiff's limitations. Given the fact that the totality of the record supports the conclusions of Dr. Whitmire regarding plaintiff's limitations, the Court finds that the ALJ erred in the lack of weight afforded to this opinion. It is apparent that the record supports a finding that plaintiff has marked restrictions in areas to include daily living, concentration, and social functioning, which would impede his ability to maintain gainful employment.

The record indicates that the ALJ relied on the opinion of the non-examining medical expert, Dr. Bolter, to conclude that plaintiff's mental impairments caused only moderate restrictions of daily living, and social functioning; and mild difficulties in concentration, persistence or pace for simple tasks in a non-public setting with minimal contact with others. Because she found that plaintiff had no marked restrictions, the ALJ concluded that he had the

RFC to perform a full range of work at all exertional levels, with "nonexertional limitations; simple tasks, nonpublic, and with little contact with others." [Tr. 15].

In this case, the ALJ discounted the opinions of treating medical sources, and relied instead on the opinion of Dr. Bolter, who merely conducted a record review of the medical records. The ALJ found that the medical evidence did not support the alleged severity of plaintiff's subjective complaints and functional limitations.

The Court has carefully reviewed the records and finds that the ALJ did not give legally adequate reasons for the decision not to rely on the medically supported assessment of the degree of plaintiff's limitations. Under the Social Security regulations, the opinion of a treating physician is accorded special deference, and the ALJ may only discount or disregard that opinion where there is better or more thorough medical evidence, or where a treating physician's opinion is so inconsistent that it undermines the credibility of such opinions. After reviewing the record as a whole, the Court finds that there was not substantial evidence to conclude that the opinions of the medical providers were inconsistent with plaintiff's treatment records, otherwise inconsistent with other medical evidence of record, or inconsistent with the testimony adduced at the hearing.

After a full review of the record and the ALJ's decision, the Court finds that there is not substantial evidence in the record as a whole to support the ALJ's decision that plaintiff's impairments were not disabling.

Based on the record before it, the Court finds that the ALJ's decision is not supported by substantial evidence in the record. The ALJ's findings that plaintiff was not disabled and could perform a full range of work at all exertional levels, with the nonexertional limitations of simple

tasks, nonpublic, and with little contact with others, is not adequately supported by the record as a whole. Accordingly, the decision of the Secretary should be reversed.

It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted. It is further

ORDERED that, pursuant to 42 U.S.C. Section 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

/s/ James C. England
 JAMES C. ENGLAND, CHIEF
United States Magistrate Judge

Date: 1/5/10